UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
Case No. 2:15-cv-13165-VAR-EAS

VEDIA L. JONES,

                                                  Hon. Victoria A. Roberts

           Plaintiff,                             Mag. J. Elizabeth A. Stafford

v.

CREDIT ACCEPTANCE
CORPORATION,

              Defendant/Third-Party Plaintiff,

v.

KALEAYAH JACKSON,

              Third-Party Defendant.

_____

**PLAINTIFF AND THIRD-PARTY DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

STATEMENT OF ISSUE....................................................................................................ii

STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY.........................iii

INDEX OF AUTHORITIES............................................................................................ iv

MOTION FOR PARTIAL SUMMARY JUDGMENT......................................................1

LR 7.1(a)(1) CERTIFICATION ........................................................................................2

BRIEF IN SUPPORT .......................................................................................................3

I.  INTRODUCTION ........................................................................................................3

II.  OVERVIEW OF THE TCPA ......................................................................................5

      A.  Automatic Telephone Dialing System (ATDS) ........................................................5

      B.  ATDS post ACA lnt'I v. Fed. Commc'ns  Comm'n, 885 F.3d  687  (D.C.  Cir. 2018)..6

      C.  Prior Express Consent As An Affirmative Defense.......................................................6

      D.  Prior Express Consent Must be Given at the Time of the Transaction..........................7

      E.  Plaintiff Need Not Be Charged For The Autodialed Call ...............................................8

      F.  Unanswered Calls Count As Violations .......................................................................9

      G.  Statutory Damages Under The TCPA...........................................................................9

      H.  Willful and Knowing Damages Under The TCPA ....................................................10

      I.  There Is No Federal Cause of Action For Indemnification Under The TCPA ............11

III.  PLAINTIFF AND THIRD-PARTY DEFENDANT'S
TELEPHONE CONSUMER PROTECTION ACT CLAIMS AND DEFENSES......................12

      A.  Defendant's TCPA Liability to Plaintiff......................................................................12

      B.  Defendant's Affirmative Defense Of Express Consent Fails........................................12

      C.  Defendant's Affirmative Defense Indemnification Under The TCPA Fails................14

D.  Plaintiff Is The Called Party, The Owner Of The Cell Phone, And The Recipient Of The Defendant's Robo calls ................................................................................................17

E.  Plaintiff Is Entitled To Statutory Damages ................................................................18

F.  Plaintiff Is Entitled To "Willful And Knowing" Treble Damages ..............................18

III.  CONCLUSION ...................................................................................................................20

PRAYER FOR RELIEF ...............................................................................................................20

CERTIFICATE OF SERVICE ......................................................................................................21

## STATEMENT OF ISSUE

1.      Whether Defendant Credit Acceptance Corporation (CAC) had ***Plaintiff Jones'*** consent

to Robo call her personal cell phone.

**Plaintiff Answers: No.**

**Defendant Answers: Yes.**

**STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITY**

***Plaintiff Jones*** relies on *Kim v. Cellco P'ship*, No. 1:14-cv-00312-JD-SLC, 2016 U.S.

Dist. LEXIS 29451 (N.D. Ind. Jan. 29, 2016).

# INDEX OF AUTHORITIES

**CASES:**

*A Fast Sign Co., Inc. v. Am. Home Svcs., Inc.*,
   747 SE2d 205. 208-09 (Ga. App. 2012) ........................................................11

*Alea London Ltd. v. Am. Home Servs., Inc.*,
   638 F.3d 768, 776 (11th Cir.2011) .........................................................5, 19

*Bates v. I.C. Sys.*,
   2009 U.S. Dist. LEXIS 96488 (W.D.N.Y. Oct. 19, 2009)...................................6

*Boyce Motor Lines, Inc. v. United States* (1952),
   342 U.S. 337, 345, 72 S.Ct. 329, 96 L.Ed. 367 ............................................11

*Bryan v. United States* (1998),
   524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197............................................11

*Castro v. Green Tree Servicing LLC*,
   No. 10-cv-7211, 2013 WL 4105196, at *18 (S.D.N.Y. Aug. 14, 2013)...........................9

*Charvat v. Ryan*,
   116 Ohio St. 3d 394, 398 (Ohio 2007)........................................................11

*D.G. v. Diversified Adjustment Service, Inc.*,
   2011 WL 5506078, *2 (N.D.Ill.2011) ...............................................17

*Donovan v. Robbins*,
   752 F.2d 1170, 1179 (7th Cir. 1985) .............................................11

*Edeh v. Midland Credit Mgmt.*,
   748 F. Supp. 2d 1030, 1038 (D. Minn. 2010)....................................7

*Fillichio v. M.R.S. Accocs.*,
   No. 09-61629-CIV, 2010 WL 4261442,
   (S.D. Fla. Oct. 19, 2010)§ 227(b)(1)(A) ..........................................9

*Hall v. Clifton Precision*,
   150 F.R.D. 525 (E.D. Pa. 1993).................................................16

*lnt'I v. Fed. Commc'ns  Comm'n*,
   885 F.3d  687  (D.C.  Cir. 2018) ................................................6

*Kim v. Cellco P'ship*, No. 1:14-cv-00312-JD-SLC,
   2016 U.S. Dist. LEXIS 29451 (N.D. Ind. Jan. 29, 2016) ...........................12, 15

*Maddox v. CBE Grp., Inc.*,
    No. 1:17-CV-1909-SCJ, 2018 U.S. Dist. LEXIS 88568 (N.D. Ga. May 22, 2018)............6

*McDannold v. Star Bank, N.A.*,
    261 F.3d 478 (6th Cir. 2001) ..........................................................................................11

*Mims v. Arrow Fin. Serv. LLC*,
    132 S. Ct. 740, 745 (U.S. 2012)....................................................................................4, 8

*Meyer v. Portfolio Recovery Assocs., Ltd. Liab. Co.*,
    696 F.3d 943 (9th Cir. 2012) ...........................................................................................8

*Moore v. Dish Network L.L.C.*,
    57 F. Supp. 3d 639, 657 (N.D.W.Va. 2014) ..................................................................19

*Nelson v. Santander Consumer USA, Inc.*,
    931 F. Supp. 2d 919, 926-27 (W.D. Wis. 2013) .......................................................17, 18

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. Cal. 2009) .................................................................................7, 9

*Sengenberger v. Credit Control Servs.*,
    2010 U.S. Dist. LEXIS 142528, 3-4 (N.D. Ill. June 17, 2010).......................................10

*Silbaugh v. Viking Magazine Servs.*,
    278 F.R.D. 389, 393 (N.D. Ohio 2012) ............................................................................8

*Smith v. Wade*,
    461 U.S. 30, 41 n.8, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)......................................10

*Stewart v. Regent Asset Management Solutions, Inc.*,
    No. 1:10-CV-2552-CC-JFK, 2011 WL 1766018 at *7 (N.D. Ga. May 4, 2011) .............11

*Thon v. Transp. TFI 11*, S.E.C.,
    No. 13-13365, 2014 U.S. Dist. LEXIS 117696 (E.D. Mich. Aug. 22, 2014)...................16

**FEDERAL RULES:**

Fed Rules Civ Proc R 30...................................................................................................16

Fed Rules Civ Proc R 56.....................................................................................................1

**LOCAL RULE:**

LR 7.1(a) ............................................................................................................................2

**FEDERAL STATUTES:**

47 U.S.C. § 227 ................................................................................1, 5, 6, 7, 9, 10, 17, 18

**FCC Reports and Decisions:**

In the Matter of Rules & Regulations Implementing the Telephone Consumer
     Protection Act of 1991, 2003 (Fed. Commc'n Cmm'n July 3, 2003)..............................5, 6

In the Matter of Rules & Regulations Implementing the Telephone Consumer
     Protection Act of 1991, 2008 (Fed Commc'n Cmm'n, January 4, 2008)...............6, 7, 8, 14

In the Matter of Rules & Regulations Implementing the Telephone Consumer
     Protection Act of 1991, 2015 (Fed Commc'n Cmm'n, July 10, 2015)...............6, 13, 17, 19

**Other Authorities:**

Black's Law Dictionary 323 (8th ed. 2004) ...................................................................7

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
Case No. 2:15-cv-13165-VAR-EAS

VEDIA L. JONES,

                                           Hon. Victoria A. Roberts

           Plaintiff,                       Mag. J. Elizabeth A. Stafford

v.

CREDIT ACCEPTANCE
CORPORATION,

          Defendant/Third-Party Plaintiff,

v.

KALEAYAH JACKSON,

          Third-Party Defendant.

_____

**PLAINTIFF AND THIRD-PARTY DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Vedia L. Jones ("Plaintiff Jones") and Third-Party Defendant Kaleayah Jackson ("Third-Party Defendant"), pursuant to Fed. R. Civ. P. 56, moves the Court for an Order granting partial summary judgment on their claims and defenses under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 et seq.[1]

---

[1] The legal standard for summary is well known and will not be repeated here. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

1

Respectfully submitted,

July 11, 2018                                STEPHEN A. THOMAS P43260
                                            Attorney for Plaintiff and Third-Party
                                            Defendant
                                            645 Griswold St., Suite 1360
                                            Detroit, Michigan  48226
                                            313-965-2265
                                            sthomas@313965Bank.com

## LR 7.1(a)(1) CERTIFICATION

I certify that Plaintiff's counsel has complied with the provisions of LR 7.1(a)(1) by meeting and conferring by telephone with counsel for Defendant CAC on June 29, 2018.  The parties were unable to agree with respect to the issue raised in this Motion and thus are at impasse and require the Court's assistance to resolve this dispute.

                                            /s/ Stephen A. Thomas
July 11, 2018                                STEPHEN A. THOMAS P43260
                                            Attorney for Plaintiff and Third-Party
                                            Defendant
                                            645 Griswold St., Suite 1360
                                            Detroit, Michigan  48226
                                            313-965-2265
                                            sthomas@313965Bank.com

2

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
Case No. 2:15-cv-13165-VAR-EAS

VEDIA L. JONES,

                                          Hon. Victoria A. Roberts
            Plaintiff,                    Mag. J. Elizabeth A. Stafford
v.

CREDIT ACCEPTANCE
CORPORATION,

            Defendant/Third-Party Plaintiff,

v.

KALEAYAH JACKSON,

            Third-Party Defendant.
_____

**BRIEF IN SUPPORT**

## I.    INTRODUCTION

Defendant Credit Acceptance Corporation ("Defendant CAC") used an Aspect automatic telephone dialing system ("ATDS") to Robo call *Plaintiff Jones* (64) times on her cellular telephone without her prior express consent and launched (8) artificial or prerecorded voice messages.  See Exhibit D – Metro PCS Call Log from *Plaintiff Jones* showing 64 calls; See Exhibit I – Call Log from Defendant CAC showing 8 artificial or prerecorded voice messages. Defendant CAC has produced no evidence they had *Plaintiff Jones'* prior express consent to Robo call her cellular telephone.  Defendant CAC is attempting to escape liability under the TCPA by falsely claiming that *Plaintiff Jones'* granddaughter, Third Party Defendant Jackson,

3

gave Defendant CAC consent to Robo call her grandmother, *Plaintiff Jones*.  Given that

*Plaintiff Jones* specifically told Defendant CAC to stop calling her cell phone, each of the

automated calls and artificial or prerecorded voice messages were made willfully in violation of

the TCPA.  Furthermore, Third Party Defendant Jackson gave sworn testimony that she did not

give Defendant CAC consent to Robo call her grandmother, *Plaintiff Jones*.  See Exhibit C

Jackson Deposition Page 28 Lines 15-25; Page 32 Lines 4-8.  Moreover, Third Party Defendant

Jackson did not or could not have consented to Defendant CAC making Robo calls to her

grandmother *Plaintiff Jones*.  Even the initial round of Robo calls to *Plaintiff Jones* by

Defendant CAC, prior to her demand that these calls stop were willful since there is no evidence

that Defendant CAC had any consent from *Plaintiff Jones* to Robo call her.  Defendant CAC's

actions and the resultant invasion of *Plaintiff Jones'* privacy are a classic example of exactly

what the TCPA was intended to prevent.  See *Mims v. Arrow Fin. Serv. LLC*, 132 S. Ct. 740, 745

(U.S. 2012).

Subsequently, *Plaintiff Jones* filed two Motions To Compel and Defendant CAC's

Fourth Supplemental Answers, Response and Objection to Plaintiff's Interrogatories, Requests

for Admission, Request for Production of Document.  Defendant CAC has produced no evidence

that *Plaintiff Jones* consented to being Robo called on her private cell phone.  Defendant CAC's

only defense to the TCPA violation is that Third-Party Defendant Jackson consented to having

Defendant CAC Robo call her grandmother, *Plaintiff Jones*.  Third-Party Defendant Jackson

testified under oath that she never gave or consented to Defendant CAC to Robo calling her

grandmother, *Plaintiff Jones*.  Defendant CAC only produced a May 2, 2014 screenshot from

their servicing system Artiva, which Defendant CAC alleges Third Party Defendant Jackson

provided *Plaintiff Jones'* cell phone number.  See Exhibit N.  However, the May 2, 2014

4

screenshot only reflects **Plaintiff Jones'** cell phone number and no notes to support Defendant

CAC's indemnification defense. Note, Agent JZC (Jasmine Cox) allegedly received the cell

phone number from Third Party Defendant has not worked for Defendant CAC since 2015 and

has not provided testimony to the same. See Exhibits D and E.

## II.      OVERVIEW OF THE TCPA

The TCPA prohibits making "any call (other than a call made for emergency purposes or

made with the prior express consent of the called party) using any automatic telephone dialing

system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular

telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA creates a private right of action

where a person may bring "an action to recover for actual monetary loss from such a violation, or

to receive $500 in damages for each such violation, whichever is greater." Id. § 227(b)(3)(B).

"The TCPA is essentially a strict liability statute" that "does not require any intent for liability

except when awarding treble damages." *Alea London Ltd. v. Am. Home Servs., Inc*., 638 F.3d

768, 776 (11th Cir. 2011).

## A.      Automatic Telephone Dialing System (ATDS)

The TCPA defines an "automatic telephone dialing system" as "equipment which has the

capacity—(A) to store or produce telephone numbers to be called, using a random or sequential

number generator, and (B) to dial such numbers." 4 7 U.S.C. § 227(a)(1). The Federal

Communications Commission ("FCC") under its rulemaking authority has declared that the

TCPA includes equipment that has "the capacity to store or produce numbers and dial those

numbers at random, in sequential order, or from a database of numbers." In the Matter of Rules

& Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 WL

21517853, 18 F.C.C.R. 14014 ¶ 131 (Fed. Commc'n Cmm'n July 3, 2003). This is because the

basic function of such equipment is "the capacity to dial numbers without human intervention." Id. ¶ 132. The FCC affirmed this definition of an ATDS in 2008.  In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 2008 WL 65485, 23 F.C.C.R. 559 ¶ 12 (Fed Commc'n Cmm'n, Jan. 4, 2008).

**B.     ATDS post ACA lnt'I v. Fed. Commc'ns  Comm'n, 885 F.3d  687  (D.C.  Cir. 2018).**

The ACA lnt'I Court held that the FCC's 2015 Order made "the [TCPA's] restrictions on autodialer calls assume an eye-popping sweep." at 697. Because "any smartphone, with the addition of software, can gain the statutorily enumerated features of an autodialer," the FCC's focus on the potential, future abilities of a device meant "that all smartphones ... meet the statutory definition of an autodialer." at 696-97. The ACA lnt'I Court rejected this interpretation of "capacity" as "an unreasonably , and impermissibly, expansive one."  at 700.  Given the ACA lnt'I decision, the Court relies on the FCC's 2003 interpretation of § 227(a)(1) to determine if Defendant's system qualifies as an ATDS.  See *Maddox v. CBE Grp., Inc*., No. 1:17-CV-1909-SCJ, 2018 U.S. Dist. LEXIS 88568 (N.D. Ga. May 22, 2018).

**C.     Prior Express Consent As An Affirmative Defense**

Defendant can avoid liability under 47 U.S.C. § 227(b)(1)(A)(iii) by proving that the Plaintiff gave the Defendant "express consent" to call the cell phone with an automatic telephone dialing system.  *Bates v. I.C. Sys*., 2009 U.S. Dist. LEXIS 96488 (W.D.N.Y. Oct. 19, 2009).  Proving express consent is an affirmative defense under the statute, and Defendant bears the burden of establishing it.[2]

---

[2] *See*: *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600 (9th Cir. Cal. 2011)("'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof. *See* 23 F.C.C.R. 559, 565 (Dec. 28, 2007) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent."); *Bates v. I.C. Sys*., 2009 U.S. Dist. LEXIS 96488 (W.D.N.Y. Oct. 19, 2009); *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 2012 U.S. Dist. LEXIS 50560, 9-10 (N.D. Ill. Mar. 20, 2012);  *D.G. v. Diversified Adjustment Serv., Inc.*, No. 11-2062, 2011 WL 5506078, at *3 (N.D. Ill. Oct.

Express consent under the TCPA is "[c]onsent that is clearly and unmistakably stated." Black's Law Dictionary 323 (8th ed. 2004). *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 955 (9th Cir. Cal. 2009). The court in *Edeh v. Midland Credit Mgmt*., 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010) (bold emphasis added) stated: Midland's call to Edeh's cellular phone was permissible only if it was made "with [Edeh's] prior express consent." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). "Express" means "explicit," not, as Midland seems to think, "implicit." Midland was not permitted to make an automated call to Edeh's cellular phone unless Edeh had previously said to Midland (or at least to Midland's predecessor in interest) something like this: "I give you permission to use an automatic telephone dialing system to call my cellular phone." Midland has no evidence that Edeh gave such express consent.

The "express consent" that a consumer must give is the consent to be called by an auto-dialer.[3] The TCPA does not prohibit manually dialed calls to cell phones and there is no consent required to make these calls.[4] It is only the automated process of calling cell phones that is prohibited, so it is obviously this to which the consumer must expressly consent.[5]

**D.     Prior Express Consent Must be Given at the Time of the Transaction**

Pursuant to the FCC's ruling In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling, 23 FCC Rcd. 559, 565 (Jan. 4, 2008), "prior express consent is deemed

---

18, 2011); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716 (S.D. Tex. 2011); *Martin v. Bureau of Collection Recovery*, No. 10-7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011).

[3] *See Thrasher-Lyon v. CCS Commer., LLC*, 2012 U.S. Dist. LEXIS 125203 (N.D. Ill. Sept. 4, 2012) ("One 'expresses' consent by, well, expressing it: stating that the other party can call, or checking a box on a form or agreeing to terms of service that explicitly permit automated telephone contact."); *Weitzner v. Iridex Corp*., 2006 U.S. Dist. LEXIS 44317, 12-13 (E.D.N.Y. June 29, 2006) and *Gottlieb v. Carnival Corp*., 595 F. Supp. 2d 212, 221-222 (E.D.N.Y. 2009) (both analyzing "express consent" in similar circumstance under the TCPA).

[4] *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. Ill. 2012) (noting debt collectors don't need consent to call cell phones manually).

[5] *Thrasher-Lyon*, LEXIS 125203 at 16-17; *Leckler*, 554 F. Supp. 2d at 1030; *Edeh*, 748 F. Supp. 2d at 1038 (describing express consent as saying: "I give you permission to use an automatic telephone dialing system to call my cellular phone.")

granted only if the wireless telephone number was provided by the consumer to the creditor, and only if it was provided at the time of the transaction that resulted in the debt at issue." *Meyer*, 696 F.3d 943, 949, 2012 U.S. App. LEXIS 21136, **7-8, 83 Fed. R. Serv. 3d (Callaghan) 1039 (9th Cir. 2012) (citing In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling, 23 FCC Rcd. 559, 564-65 (Jan. 4, 2008)).  "Thus, consumers who provide[] their cellular telephone number to creditors after the time of the original transaction are not deemed to have consented to be contacted at those numbers for purposes of the TCPA."  Id.

### E.    Plaintiff Need Not Be Charged For The Autodialed Call

As a matter of statutory construction, and in considering Congressional intent, it is beyond cavil that Plaintiff need not incur charges for the illegal calls in order to establish a violation of the TCPA.  As the Court in *Silbaugh v. Viking Magazine Servs*., 278 F.R.D. 389, 393 (N.D. Ohio 2012) recently noted:[6]

> …every court examining the pertinent language of the TCPA has concluded that a plaintiff does not have to prove that he was charged for a call to state a claim under the TCPA.

One of the stated purposes of the TCPA was also to prevent the invasion of privacy and nuisance resulting from automated calls to cell phones.  See *Mims*, 132 S. Ct. at 745.[7]

---

[6] See also: *Torres v. Nat'l Enter. Sys.*, 2012 U.S. Dist. LEXIS 110514 (N.D. Ill. Aug. 7, 2012); *Martin v. Leading Edge Recovery Solutions*, LLC, 2012 U.S. Dist. LEXIS 112795, 17-18 (N.D. Ill. Aug. 10, 2012); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 729 (S.D. Tex. 2011);  *Buslepp v. Improv Miami, Inc*., 2012 U.S. Dist. LEXIS 62489, 4-5 (S.D. Fla. May 4, 2012); *Abbas v. Selling Source, LLC*, 2009 U.S. Dist. LEXIS 116697, 6-7 (N.D. Ill. Dec. 14, 2009); *Lozano v. Twentieth Century Fox Film Corp*., 702 F. Supp. 2d 999, 1010 (N.D. Ill. 2010); *Mitchem v. Ill. Collection Serv*., 2010 U.S. Dist. LEXIS 76581 (N.D. Ill. July 29, 2010); *Kane v. Nat'l Action Fin. Servs*., 2011 U.S. Dist. LEXIS 141480, 21-22 ( E.D. Mich. Nov. 7, 2011); *Gutierrez v. Barclays Group*, 2011 U.S. Dist. LEXIS 12546 (S.D. Cal. Feb. 9, 2011); *Smith v. Microsoft Corp*., 2012 U.S. Dist. LEXIS 101197, 13-15 (S.D. Cal. July 20, 2012); *Silbaugh v. Omni Credit*, 2012 U.S. Dist. LEXIS 11175 (D. Md. Jan. 31, 2012).

[7] *See also Soppet*, 679 F.3d at 637; *Bonime v. Avaya, Inc*., 547 F.3d 497, 499 (2d Cir. N.Y. 2008); *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 954 (9th Cir. Cal. 2009); *Smith v. Microsoft Corp*., 2012 U.S. Dist. LEXIS 101197, 13-15 (S.D. Cal. July 20, 2012); *Martin v. Leading Edge Recovery Solutions, LLC,* 2012 U.S. Dist. LEXIS 112795, 14-15 (N.D. Ill. Aug. 10, 2012).

### F.     Unanswered Calls Count As Violations

The TCPA makes it unlawful to place a call using its ATDS without prior express consent of the called party, regardless of whether the call was answered by a person, an answering machine, or not at all.  See *Castro v. Green Tree Servicing LLC*, No. 10-cv-7211, 2013 WL 4105196, at *18 (S.D.N.Y. Aug. 14, 2013) ("[F]or purposes of Plaintiffs' TCPA claim, it is immaterial whether the Plaintiffs picked up all of Defendants' calls or whether several of the calls went unanswered."); *Satterfield v. Simon & Schuster, Inc*., 569 F.3d 946, 953-54 (9th Cir. 2009) (holding that "to call" in the TCPA means "to communicate with or try to get in communication with a person by telephone.") (emphasis added); *Fillichio v. M.R.S. Accocs.*, No. 09-61629-CIV, 2010 WL 4261442, at *3 (S.D. Fla. Oct. 19, 2010) (The TCPA "does not include [] a requirement . . . that the recipient of a call must answer the phone or somehow be aware of the call in order for there to be a violation.").

### G.     Statutory Damages Under The TCPA

The TCPA is a strict liability statute.  No intent need be shown to establish a violation.[8] The TCPA provides a private right of action and permits a successful Plaintiff to recover actual monetary loss for a violation of § 227(b)(1)(A). The TCPA provides that a Plaintiff shall receive actual damages for such violations "or $500 in damages for each such violation, whichever is greater."[9]  The award of $500.00 per violation is a mandatory floor.[10]  In addition, the TCPA

---

[8] *Alea London Ltd. v. American Home Services, Inc.,* 638 F.3d 768, 776 (11 Cir. 2011) (quoting *Penzer v. Transp. Ins.Co.,* 545 F.3d 1303, 1311 (11th Cir. 2008)*); Harris v. World Fin. Network Nat'l Bank*, 2012 U.S. Dist. LEXIS 46882, 8-9 (E.D. Mich. Apr. 3, 2012); *Melrose Hotel Co. v. St Paul Fire and Marine Ins. Co*., 432 F.Supp.2d 488, 2006 TCPA Rep. 1640 (E.D.Pa. Apr. 19, 2006); *Park University Enterprises, Inc. v American Casualty Company of Reading, PA*, 314 F. Supp 2d 104  (D. Kansas 2004).

[9] 47 U.S.C. §227(b)(3)(B); *Mims*, 132 S.Ct. at 740.

[10] *See Charvat v. NMP, LLC*, 2012 U.S. Dist. LEXIS 139505 (S.D. Ohio Sept. 27, 2012); *First Nat'l Collection Bureau, Inc. v. Walker*, 348 S.W.3d 329, 346 (Tex. App. Dallas 2011); *Fillichio v. M.R.S. Assocs*., 2010 U.S. Dist. LEXIS 112780, 11-13 (S.D. Fla. Oct. 19, 2010); *Chair King, Inc. v. Houston Cellular Corp*. 1995 WL 1693093 (S.D. Tex. Nov. 2, 1995); *Kopff v. Roth*, 2007 U.S. Dist. LEXIS 43702, 2007 WL 1748918, at *2 (D.D.C. June 15, 2007);  *Bransky v. Shahrokhi*, 2005 Ohio 97 (Ohio Ct. App., Cuyahoga County, Jan. 13, 2005).

permits up to another $1,000.00 if the violation is deemed "willful or knowing" under the statute[11]

## H.     Willful and Knowing Damages Under The TCPA

Courts are split on the exact meaning "willful or knowing" as contained in the TCPA. *Sengenberger v. Credit Control Servs.*, 2010 U.S. Dist. LEXIS 142528, 3-4 (N.D. Ill. June 17, 2010). Under one approach, the Defendant need only intend to make the calls to the specific number using their auto-dialer.[12] Under the other approach, a Defendant must have known about the TCPA prohibitions at issue before making the call.[13] The first approach, requiring only that Defendants know they were making the call, appears to be the better approach as it is based solidly on statutory and U.S. Supreme Court authority. The Court in Sengenberger, noted: Courts may treble the damages award if the court finds that defendant's violations were committed "willfully or knowingly." 47 U.S.C. § 227(b)(3). Although neither the TCPA nor the FCC regulations define the terms "willfully or knowingly", courts have generally interpreted willfulness to imply only that an action was intentional. *Smith v. Wade*, 461 U.S. 30, 41 n.8, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983). While the TCPA does not define willful, the Communications Act of 1943, of which the TCPA is a part, defines willful as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision, rule or regulation.

---

[11] *See*, 47 U.S.C. §227(b);  *Harris v. World Fin. Network Nat'l Bank*, 2012 U.S. Dist. LEXIS 46882, 8-9 (E.D. Mich. Apr. 3, 2012); *First Nat'l Collection Bureau, Inc. v. Walker*, 348 S.W.3d 329, 346 (Tex. App. Dallas 2011); *Stewart v. Regent Asset Mgmt. Solutions*, 2011 U.S. Dist. LEXIS 50046, 19-20 (N.D. Ga. May 4, 2011).
[12] *Sengenberger*, 2010 WL 1791270; *Stewart*, 2011 WL 1766018; *Charvat v. Ryan*, 116 Ohio St. 3d 394, 398 (Ohio 2007).
[13] *See Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899–901 (W.D.Tex.2001); *Stern v. Bluestone*, 2008 NY Slip Op 611 (N.Y. App. Div. 1st Dep't 2008, reversed on other grounds by *Stern v. Bluestone*, 12 NY3d 873 (2009); *Kaplan v. First City Mortg.* 183 Misc.2d 24 (NY City Ct. 1999). *Charvat*, *Blastfax*, *Bluestone*, and *Kaplan*, are "junk fax" cases. The TCPA's damages provision, 47 U.S.C. §227(b), applies to both illegal faxes as well as illegal calls to cell phones.

In *Charvat v. Ryan*, 116 Ohio St. 3d 394, 398 (Ohio 2007), the Ohio Supreme Court also found that the statute, and the US Supreme Court precedent controlling: "Knowingly" is undefined in the TCPA, but courts have often defined the term in criminal cases.  In *Bryan v. United States* (1998), 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197, the United States Supreme Court explained that 'knowingly' does not necessarily have any reference to a culpable state of mind or to knowledge of the law.  As Justice Jackson correctly observed, the knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.' [*Boyce Motor Lines, Inc. v. United States* (1952), 342 U.S. 337, 345, 72 S.Ct. 329, 96 L.Ed. 367]

Finally, "'to establish a knowing violation of the TCPA for an award of treble damages, a plaintiff must prove only that the defendant knew that it acted or failed to act in a manner that violated the statute, not that the defendant knew that the conduct itself constituted a violation of the law.'"  *Stewart v. Regent Asset Management Solutions, Inc*., No. 1:10-CV-2552-CC-JFK, 2011 WL 1766018 at *7 (N.D. Ga. May 4, 2011) quoting *Charvat*, 879 N.E.2d at 770; see also *A Fast Sign Co., Inc. v. Am. Home Svcs., Inc*., 747 SE2d 205. 208-09 (Ga. App. 2012).

## I.    There Is No Federal Cause of Action For Indemnification Under The TCPA

It is well settled that "[w]here contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law." *Donovan v. Robbins*, 752 F.2d 1170, 1179 (7th Cir. 1985) (citations omitted); *McDannold v. Star Bank, N.A*., 261 F.3d 478 (6th Cir. 2001). Because Defendant CAC seeks contribution or indemnification for damages that would result from a violation of the TCPA, federal law governs.  There is no right to indemnification under

the federal TCPA.  See Exhibit A *Kim v. Cellco P'ship*, No. 1:14-cv-00312-JD-SLC, 2016 U.S.

Dist. LEXIS 29451 (N.D. Ind. Jan. 29, 2016).

### III.   PLAINTIFF AND THIRD-PARTY DEFENDANT'S TELEPHONE CONSUMER PROTECTION ACT CLAIMS AND DEFENSES

#### A.   Defendant's TCPA Liability to Plaintiff

The facts are clear and this case is ripe for summary judgment.  Defendant CAC has

admitted that it made calls to the ***Plaintiff Jones'*** cellular telephone using the Aspect telephone

dialing system.  See Exhibit K Ruhle Deposition Page 10 Line 2; Exhibit L Larrair Deposition

Page 15 Line 3; Exhibit J.  The "Aspect dialer system" used by Defendant CAC to Robo call

***Plaintiff Jones*** is indisputably an "automatic telephone dialing system" under the TCPA.[14]

Without a doubt, the telephone system utilized by Defendant CAC qualifies as an ATDS under

any reasonable definition, and it is an ATDS as defined by the FCC and the Courts.  .  See

Exhibit K Ruhle Deposition Page 10 Lines 6-24; Page 15 Lines 21-22; Page 22 Lines 22-24 and

Pages 33-34 Lines 17-13.  ***Plaintiff Jones'*** expert declaration, filed with this court, opinions that

the "Aspect dialing system" is an ATDS under the TCPA.  See Supplemental Declaration of

Randall A. Snyder ECF No. 53 filed 06/26/18 Page ID.938-939 Pages 16,17 of 17 and See

Exhibit H (under seal).  Defendant CAC admits it used this Aspect ATDS dialer system to call

***Plaintiff Jones'*** cell phone, and it has not produced a scintilla of documentary evidence that it

had ***Plaintiff Jones'*** prior express consent.  This is all ***Plaintiff Jones*** needs to show to establish

liability under the TCPA.

#### B.   Defendant's Affirmative Defense Of Express Consent Fails

---

[14] **Aspect Unified** IP Version 6.6 Service Pack 2 ("Dialer"), a predictive dialing **system** which generates outbound dials at a rate of more than 100 calls per minute. Modica v. Green Tree Servicing, LLC, No. 14 C 3308, 2015 U.S. Dist. LEXIS 55751 (N.D. Ill. Apr. 29, 2015);  **Aspect** is, undeniably, an automatic **telephone** dialing **system**, also known as an auto-dialer **system**. Diggs v. Wilshire Commer. Capital, L.L.C., No. 2:15-1428 WBS AC, 2018 U.S. Dist. LEXIS 36620 (E.D. Cal. Mar. 6, 2018).

Defendant CAC cannot point to any evidence that *Plaintiff Jones* ever consented to autodialed calls or prerecorded messages to her cellular telephone from Defendant CAC. *Plaintiff Jones* also specifically revoked any right to Robo call her cell phone.  See Exhibit B Jones Deposition Page 42 Lines 19-22; Page 56 Lines 7-24.  Nevertheless, Defendant CAC's own uncontroverted calls logs from its Aspect Dialer System show calls went out to *Plaintiff Jones*' cell phone on and after she told Defendant CAC to stop calling.  In its 2015 Declaratory Ruling on the TCPA, the FCC specifically stated that a consumer may revoke a caller's right to use an ATDS to call her cell phone by any reasonable means:

> Additionally, we clarify that a called party may revoke consent at any time and through any reasonable means. A caller may not limit the manner in which revocation may occur.[ ] Moreover, we emphasize that regardless of the means by which a caller obtains consent, under longstanding Commission precedent, if any question arises as to whether prior express consent was provided by a call recipient, the burden is on the caller to prove that it obtained the necessary prior express consent.184
> --------------
> FN184 See ACA Declaratory Ruling, 23 FCC Rcd at 565, para. 10 (concluding that "[s]hould a question arise as to whether express consent was provided, the burden will be on [the caller] to show it obtained the necessary prior express consent").

p. 29-20, ¶47 (footnote 183 omitted).  Telling Defendant to stop while in the middle of a collection call is unarguably a "reasonable means."  Even so, Defendant CAC cannot prove it ever had *Plaintiff Jones'* consent in the first instance.

Moreover, Defendant CAC has offered no competent testimony or evidence whatsoever to establish that *Plaintiff Jones* consented to Robo calls from Defendant CAC's ATDS.  Defendant CAC has not produced a signed contract, a sales slip, a receipt, or anything seen, signed, provided, or acknowledged by *Plaintiff Jones* that could somehow provide prior express consent to robodial her cell phone number.  Those are the records that the FCC requires Defendant CAC to produce to prove that it got *Plaintiff Jones'* prior express consent to Robo call her cell phone:

> To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. **Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.**

*In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 2008* WL 65485, 23 F.C.C.R. 559 ¶ 12 (Fed Commc'n Cmm'n Jan .4, 2008) (footnotes omitted; bold emphasis added).  Under the TCPA, the burden is squarely on Defendant CAC to produce this proof and it has not.  It has no signed purchase agreements, no sales slips, and no credit applications from ***Plaintiff Jones***.

Defendant CAC has produced no evidence whatsoever that ***Plaintiff Jones*** gave her prior express consent to be called on her cell phone with an automatic telephone dialing system, despite serving its Fourth Supplemental Answers, Response and Objection to Plaintiff's Interrogatories, Requests for Admission, Request for Production of Documents.  This should end the legal analysis.  Without any competent evidence that ***Plaintiff Jones*** gave her express consent to be called on her cellular phone with a dialer, Defendant CAC cannot establish its affirmative defense of consent.  Defendant CAC does not have a scintilla of evidence to establish its only affirmative defense of prior express consent under the TCPA, and therefore summary judgment is appropriate on ***Plaintiff Jones'*** TCPA claims.

## C.      Defendant's Affirmative Defense Indemnification Under The TCPA Fails

Defendant CAC is attempting to shield liability by offering a " screenshot indemnification defense " by producing one (1) screenshot allegedly taken May 2, 2014 in which Third Party Defendant Jackson purportedly gave her grandmother's cell phone ***and also***

consented to having Defendant CAC Robo call **Plaintiff Jones**. This argument is absurd. First, Third Party Defendant Jackson did not or could not have provided consent to call her grandmother's cell phone. See Exhibit B Jones Deposition Page 53 Lines 5-15; Exhibit C Jackson Deposition Page 28 Lines 15-25; Page 32 Lines 4-8. Second, Defendant CAC did not produce Agent JZC (Jasmine Cox) to substantiate its screenshot indemnification defense. Agent JZC (Jasmine Cox) has not worked at CAC since 2015 and has not provided testimony to support Defendant CAC's screenshot indemnification defense. See Exhibits E and F; Doc 42 Order ¶2. Defendant CAC's 30(b)(6) witness did not know Agent JZC (Jasmine Cox) by name, did not know whether the agent was still employed with Defendant CAC.[15] See Exhibit L Larrair Deposition Page 20 Lines 15-25. Plaintiff's Counsel questions whether someone from Defendant CAC spoke to Agent JZC (Jasmine Cox) regarding the May 2, 2014 call. See Exhibits D and E. Defendant CAC did not produce Agent JZC (Jasmine Cox) at the court order deposition. Doc 42 ¶2. Third, there is no recording of the May 2, 2014 call. Fourth, there is no Federal cause of action for Indemnification under the TCPA. *Kim v. Cellco P'ship*.

Plaintiff argues to this Court that the screenshot indemnification defense is totally manufactured. Manufactured testimony was also on display by Defense Counsel's witness coaching during Robin Larrair's deposition, which reads in part:

1 MR. THOMAS: I'm going to object to you
2 talking to your client during a deposition.
3 MR. KING: Okay.
4 MR. THOMAS: It's improper.
5 MR. KING: Objection is noted.
6 BY MR. THOMAS:
7 Q. What did your counsel just tell you?
8 MR. KING: Don't answer that.
9 She's not answering that question.
10 BY MR. THOMAS:

---

[15] Defendant CAC 30(b)(6) witness did not provide the name of the Agent JZC and Plaintiff Jones filed her first Motion to Compel Doc 34 and Order Resolving Plaintiff's Motion To Compel Doc 42.

11 Q. So you're going to take your counsel's advice and not
12 answer that question?
13 MR. KING: Don't answer.
14 Yes, she's taking that advice.

See Exhibit L Larrair Deposition Page 65 Lines 1-14.  Under Rule 30(c) of the Federal Rules of

Civil Procedure, the examination of a witness at a deposition is to "proceed as [it] would at trial."

FRCP 30(c)(1).  At trial, it is clear that a witness may not confer with counsel during his or her

testimony.  And attorneys are well-advised to avoid discussions about that testimony with their

client-witness during breaks or recesses.  Objections are limited to form, privilege, and

harassment, and counsel and client often discuss the deposition during breaks or recesses.  But, at

least according to some courts, the same rules that apply at trial should apply during depositions.

That is, discussions between witness and attorney should not take place, and if they do, the

content of those discussions may be discovered by opposing counsel.  In *Hall v. Clifton

Precision*, 150 F.R.D. 525 (E.D. Pa. 1993), the U.S. District Court for the Eastern District of

Pennsylvania addressed a lawyer's conduct at a deposition.  The lawyer repeatedly interjected

during the deposition, and asked that he be allowed to confer with his client about a particular

document before his client answered any questions related to it.  The Court held that

"conferences between witness and lawyer are prohibited both during the deposition and during

recesses." 150 F.R.D. at 529.  Further, the Court held that anything a lawyer tells a witness

during such a conference is not protected by the attorney-client privilege and may be inquired

into by opposing counsel in order to determine whether any coaching has occurred. *Id*.  See also,

*Thon v. Transp. TFI 11*, S.E.C., No. 13-13365, 2014 U.S. Dist. LEXIS 117696 (E.D. Mich. Aug.

22, 2014).

*Plaintiff Jones'* cell phone number was disclosed on the Non Party Legacy Motors

references disclosure.  See Exhibit G.  Plain and simple, that's how Defendant CAC got *Plaintiff*

*Jones'* cell phone number.

**D.     Plaintiff Is The Called Party, The Owner Of The Cell Phone, And The Recipient Of**

**The Defendant's Robo calls**

One district court has held has held that:

> Nothing in § 227(b)(1) limits the protections of the statute to the owner of the phone. Rather, that section prohibits the use of automatic dialing "to any telephone number assigned to a ... cellular telephone service" regardless who answers or receives the call. Further, 47 U.S.C. § 227(b)(3), which creates a private right of action for violations of the statute, does *927 not limit lawsuits to those brought by "subscribers" or "called parties," but applies to "a person or entity." See also *D.G. v. Diversified Adjustment Service, Inc.*, 2011 WL 5506078, *2 (N.D.Ill.2011) ("Nothing in [§ 227(b)(3) ] indicates that a private right of action is limited to the 'called party.' "). Accordingly, I conclude that it is irrelevant to plaintiff's claim under § 227 whether she or her husband was listed on the phone bill.

*Nelson v. Santander Consumer USA, Inc.*, 931 F. Supp. 2d 919, 926-27 (W.D. Wis. 2013)

vacated after settlement, No. 11-CV-307, 2013 WL 5377280 (W.D. Wis. June 7, 2013).  The

Court's 2013 view of this issue is entirely congruent with the 2015 FCC Declaratory Ruling on

the matter:

> The TCPA states that it "shall be unlawful" to "make any call" using an autodialer or an artificial or prerecorded voice, absent certain exceptions, without "the prior express consent of the called party." We find that the "called party" is the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan. Both such individuals can give prior express consent to be called at that number. Thus, with the limited exception discussed below, **calls to reassigned wireless numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based.**

p. 40, ¶73 (footnotes omitted; bold emphasis added).

In this case, *Plaintiff Jones* obtained a Metro PCS cellular telephone in 2008 and was

assigned telephone number (313) 957-1230.  See Exhibit B Jones Deposition Page 26 Lines 1-

22.  Since that time, *Plaintiff Jones* has been the sole customary user and subscriber of this

cellular phone, has paid for the phone's plan, and was the recipient of these Robo calls by

Defendant CAC.  See Exhibit B Jones Deposition Page 30 Lines 7-13.  Based on the previous

rulings and the FCC, and because *Plaintiff Jones* received the Robo calls and artificial or

prerecorded voice messages on her cell phone, *Plaintiff Jones* has standing to bring this claim

under the TCPA.

**E**.      **Plaintiff Is Entitled To Statutory Damages**

The TCPA imposes mandatory statutory damages of $500.00 per illegal autodialed call

prerecord messages to a cell phone without prior express consent.  Defendant CAC has admitted

to making such phone calls and leaving prerecorded messages to *Plaintiff Jones'* cell phone.

*Plaintiff Jones* is thus entitled to $36,000.00 under this provision of the TCPA (64 automated

Robo calls plus 8 prerecorded messages at $500 per call).

**F.**      **Plaintiff Is Entitled To "Willful And Knowing" Treble Damages**

*Plaintiff Jones* requests that the Court deem the Defendant CAC's violations to be

"willful or knowing" as a matter of law based upon the uncontroverted facts before this Court.  It

is difficult to imagine how the Defendant CAC's actions could be considered anything but

"willful or knowing" under either standard.  One court has held:

> Under 47 U.S.C. § 227(b)(3)(B), a plaintiff may "recover for actual monetary loss
> from ... a violation, or ... receive $500 in damages for each ... violation, whichever is
> greater." In addition, "[i]f the court finds that the defendant willfully or knowingly
> violated this subsection or the regulations prescribed under this subsection, the court
> may, in its discretion, increase the amount of the award to an amount equal to not
> more than 3 times the amount available under subparagraph (B) of this paragraph."

*Nelson*, 931 F. Supp. at 930.  Consider the following:  First, Defendant CAC has provided in its

discovery responses their procedure for TCPA compliance.  See Exhibit M.  So, there is no

question Defendant CAC knew about the TCPA, about its potential liability for violations, and

about its need for compliance.  Defendant CAC was obviously aware that it was illegal to use its auto-dialer to call cell phones without a consumer's prior express consent.  Defendant CAC knew or should have known that what they were doing violated the law without that prior express consent.

Second, the volume of calls and artificial or prerecorded voice messages, combined with the context, clearly evidences "willful and knowing" misuse of the dialing system.

Third, the "intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct."  *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir.2011).  See also, *Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 657 (N.D.W.Va. 2014).  This fits Defendant CAC's conduct in this case perfectly.  Defendant CAC knew or should have known that they were calling ***Plaintiff Jones*** after specifically being told to stop.  This is the very constructive and actual knowledge that the FCC referred to in its 2015 Declaratory Ruling on the TCPA.

Fourth, ***Plaintiff Jones*** clearly and unequivocally revoked any right Defendant CAC may have had to call her cell phone.  See Exhibit B Jones Deposition Page 42 Lines 19-22; Page 56 Lines 7-24.

The evidence is clear.  Defendant CAC did use an ATDS to Robo call and leave artificial or prerecorded voice messages on ***Plaintiff Jones'*** cellular telephone and every material fact in this case leads to that singular conclusion.  Defendant CAC willfully treated ***Plaintiff Jones'*** cellular phone number as though it had her prior express consent to Robo call her and leave artificial or prerecorded voice messages, when in fact it has produced no such evidence of consent.  Defendant CAC willfully ignored its obligation to stop when ***Plaintiff Jones*** told Defendant CAC that she wanted the calls to stop.

III.     CONCLUSION

There is no material issue of disputed fact regarding whether Defendant CAC autodialed *Plaintiff Jones'* cellular telephone (64) times and left (8) artificial or prerecorded voice messages without her prior express consent.  Likewise, there is no material dispute of fact that Defendant CAC's actions in this case were "willful or knowing."  By any standard, Defendant CAC's actions and omissions in robodialing were willful or knowing.[16]   As there are no contested facts, the Court should rule as a matter of law that Defendant CAC acted "willfully or knowingly."[17]

PRAYER FOR RELIEF

WHEREFORE, *Plaintiff Jones* requests that the Court grant her Motion for Partial Summary Judgment, and enter a partial judgment in favor of *Plaintiff Jones* against Defendant CAC for $108,000.00, for $36,000.00 in statutory TCPA damages and for $72,000 in willfulness damages under the TCPA.  In the alternative, to award $36,000.00 in statutory damages and to set this matter on for a jury trial as to treble damages.

---

[16] *See J2 Global Communs., Inc. v. Blue Jay, Inc*., 2009 U.S. Dist. LEXIS 111609 (N.D. Cal. Aug. 4, 2009) ("The Court need not decide in the instant case whether knowledge of the law is required before a treble damages award may be made under the TCPA. Under either standard -- *i.e.*, knowingly violating the TCPA or simply knowingly sending an unsolicited communication -- the Court concludes that a treble damages award is proper in the instant case.")

[17]     *See Sengenberger v. Credit Control Servs*., 2010 U.S. Dist. LEXIS 43874 (N.D. Ill. May 5, 2010)("There is no dispute as to whether Defendants intentionally made the contested phone calls to Plaintiff. Defendants have put forth no facts to contest the assertion that any of the nine disputed phone calls were made willfully or knowingly. Accordingly, I find that Defendants knowingly and willfully made the phone calls.")

Respectfully submitted,

/s/ Stephen A. Thomas

July 11, 2018                                         STEPHEN A. THOMAS P43260
                                                     Attorney for Plaintiff and Third-Party
                                                     Defendant
                                                     645 Griswold St., Suite 1360
                                                     Detroit, Michigan  48226
                                                     313-965-2265
                                                     sthomas@313965Bank.com

## CERTIFICATE OF SERVICE

I, Stephen A. Thomas, hereby state that on July 11, 2018, I filed the foregoing document

using the court's CM/ECF System, and all counsel of record will receive the same.

/s/ Stephen A. Thomas
STEPHEN A. THOMAS P43260
Attorney for Plaintiff and Third-Party
Defendant